(No. 31031.—)

HELEN NOWOGURSKI, Appellee, *vs.* ZIGMUNT NOWOGURSKI, Appellant.

*Opinion filed November 22, 1949.*

FRANCIS X. GOLNIEWICZ, of Chicago, for appellant.

LLOYD C. MOODY, of Chicago, (HERBERT BEBB, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Zigmunt Nowogurski appeals to this court from a decree of the superior court of Cook County, granting a divorce to the appellee, Helen Nowogurski, on the ground of desertion, and ordering the transfer to her of a residence property, the title to which had been held by the parties in joint tenancy. A freehold being thus involved, the appeal comes directly to this court.

The parties were married in 1921, and have three children, all of whom were of legal age at the time of the hearing of this cause. In 1929 appellant left the home and remained absent until August, 1934, at which time he returned and thereafter lived with the family until September 4, 1943. On the latter date, appellant was committed to a State institution on the petition of appellee, and remained there until discharged on January 17, 1945. He did not then return to appellee or his home, nor has he ever lived with appellee since just prior to his commitment. Appellee filed her complaint for divorce on February 20, 1947, alleging desertion which commenced on the date of appellant's discharge from the hospital. After hearing the evidence, the trial court found that appellant had been guilty of wilful desertion for the space of one year immediately preceding the filing of the complaint.

In considering appellant's contention that the evidence does not sustain the finding of desertion, we find that it is undisputed that he did not return to his residence or cohabit with appellee as man and wife after the date of his hospital discharge. His answer to the complaint alleged that his wife and children kept him from doing so by threats and violence; however, no evidence was introduced to substantiate this allegation. Under the state of the record we cannot say that the ruling of the chancellor that appellant was guilty of wilful desertion is against the manifest weight of the evidence.

We now come to consider appellant's principal objection to the decree appealed from, that is, the direction that he convey to appellee his interest in their jointly held real estate. The property involved is a two-family dwelling, the first floor of which is occupied by appellee and the children living with her, and the second floor by a tenant. Appellee's original complaint prayed for a transfer of the property as rightfully and equitably belonging to her, but did not allege where or how she acquired such rights. At

the close of the evidence, appellee, with leave of court, filed an amended complaint setting forth that the real estate was purchased with her funds in August, 1937, and that subsequent taxes and mortgage payments were made from her funds. It was also alleged that in consideration of the promise of appellant to desist from his drinking of alcoholic liquors, and from abusive conduct, and of his further promise to make a home for her and their children, appellee took title in both their names as joint tenants. The allegations concluded that the property was in fact her sole property and that legal title in the name of the husband was held for the benefit of appellee. The chancellor found, for the reasons alleged, that appellant had no title or interest in the real estate and directed the execution of a deed to appellee.

The evidence relating to this issue discloses that during the early part of the marriage, the parties lived in a building owned by appellee's father, and that appellant contributed but little to the family needs; that appellant left and remained away from appellee for the period of five and one-half years immediately prior to August, 1934, at which time he returned and lived with her until September, 1943; that during the period of his absence she worked as a waitress for $20 a week. It was also shown that from 1934 to 1943, appellant gave appellee a portion of his pay checks at irregular and uncertain intervals. Appellee also received financial assistance from a daughter who started working in 1941 and a second daughter who started to work in 1943. She testified that the property was purchased in 1937 for $5200, which obligation was discharged by a cash down-payment of $2200, and by monthly payments, the last of which was in August, 1942. The evidence tends to show appellee accumulated the money which went into the purchase, through a savings of $1500, an inheritance of $1000 from her father, a loan of $700 from a brother-in-law, rental from a portion of the property, and from

board and room paid to her by her daughters. Appellant's testimony was to the effect that he had drawn $2500 from a bank to make the down payment, and had paid the balance of the purchase price from his own pay checks. His testimony in this respect was uncorroborated, while that of appellee was supported by other witnesses.

Evidence was also introduced by appellee to show that from 1937 to 1943 appellant spent most of his money for liquor, was frequently intoxicated and abusive to his wife and children despite the promise he had made to reform when the residence was purchased. Two witnesses in his behalf testified that he did not get drunk during this period and that he worked steadily. In passing, it would seem that the commitment of appellant to a State institution for drunkenness in 1943, lends credence to appellee's version of his conduct and condition.

Section 17 of the Divorce Act (Ill. Rev. Stat. 1947, chap. 40 par. 18,) provides: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." In construing and applying this section, this court has said that if the wife's money came into the hands of the husband and was invested by him in real estate to which he holds title, or if her earnings or savings have gone into his possession and aided him in acquiring the real estate, the court may properly, when dissolving the marriage relation, decree that the husband convey to the wife the title in fee to such real estate, in order to effect an equitable and fair adjustment of the property rights of the parties. *Anderson* v. *Anderson,* 380 Ill. 435; *Killebrew* v. *Killebrew,* 398 Ill. 432.

The evidence shown in the record of the present case, while confused to a degree as a result of having been introduced in no logical sequence, and because of the partial

unfamiliarity of some of the witnesses with the English language, is sufficient to indicate that appellee was the party to this marriage relation who, by her frugal habits, saved the money used for the down-payment on the contested property. Likewise it·was her inheritance, borrowing of money and management of the property, which enabled the completion of the purchase. Appellant's testimony that the down-payment and balance were paid from his savings and earnings is difficult to reconcile with the testimony relating to his habits, his employment and his relationship over the years with his family. There is also uncontradicted testimony that he gave little or nothing of his earnings to the support and care of his wife and children.

In the recent case of *Vesolowski* v. *Vesolowski*, 403 Ill 284, we approved a divorce decree which gave to the wife a business property theretofore held jointly by the husband and wife. There the down-payment on the property had been realized from the proceeds of sale of another jointly owned business, and from the wife's savings. Subsequent mortgage payments on the new premises were made out of the profits of the business which resulted from work performed by the wife alone, with no assistance from her husband, who for a time was also hospitalized because of addiction to alcohol. Under the facts, we held that the entire business property was equitably in the wife, and affirmed a transfer to her as ordered by the trial court. While the facts and the situation between the parties there are not in all phases parallel with those existing between the appellant and appellee in this case, the same principles of equity expressed in that opinion are applicable here. A consideration of all the evidence before us is convincing that it was the thrift and acumen of appellee which made possible the purchase of the residence property, and presents a proper and equitable basis for adjudging appellee to be entitled to ownership as between herself and her husband. The chancellor did not grant her prayer for

alimony, thus to a certain extent benefitting and compensating appellant for the compulsory relinquishment of his title interest in the real estate.

Under all the circumstances, we cannot say that the portion of the decree disposing of the property, as was done herein, was inequitable or against the manifest weight of the evidence.

Other errors assigned by appellant attack rulings of the trial court made in reference to the pleadings. They are of a commonplace nature and do not call for a detailed discussion in this opinion. We have examined each point raised with utmost care and find them to be without merit. We conclude that the decree of the superior court was justified and proper, and it will be affirmed.

*Decree affirmed.*